**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **FRAN SCHINDLER, SUSAN CALDWELL, and JIM CHASTAIN,** | | |
| **Plaintiffs,** | | |
| **v.** | | **1:10-cv-4012-WSD** |
| **GOVERNOR JOHN NATHAN DEAL and ATTORNEY GENERAL SAMUEL SCOTT OLENS,** | | |
| **Defendants.** | | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss based upon Mootness [37] and Plaintiffs' Motion for Leave to File Second Amended Verified Complaint [40].

## I.     BACKGROUND

This is a 42 U.S.C. § 1983 pre-enforcement challenge to the constitutionality of Georgia's now-invalidated Assisted Suicide Statute, Ga. Code Ann. § 16-5-5(b) (the "Statute").  The Statute did not directly prohibit assisted suicide; instead it criminalized publicly advertising, offering, or holding oneself out as offering to intentionally and actively assist another person commit suicide, combined with any

overt act to further the purpose of intentionally and actively assisting another person to commit suicide.

There appears to have been only a single prosecution for publicly offering to assist suicide since Georgia's legislature enacted the Statute in 1994. On March 9, 2010, the State of Georgia filed an indictment against four volunteers for the Final Exit Network ("FEN") and Final Exit Network, Inc., for violating the Statute. Indictment, Georgia v. Goodwin et al., No. 10CR-0103 (Forsyth Super. Ct. Mar. 9, 2010) ("Goodwin"). FEN is a national organization that advocates in favor of legalizing assisted suicide for those who suffer from fatal or irreversible illness or intractable pain. Its members provide information and support to individuals who want to commit suicide, including by demonstrating methods of committing suicide; being present when an individual commits suicide; and holding the hands of individuals during the act of suicide. The Goodwin defendants were charged with "offering to assist in Commission of Suicide" based on their involvement in John D. Celmer's suicide on June 19, 2008. They sought to dismiss the Indictment by challenging the constitutionality of the Statute.

While the Goodwin case was pending, Plaintiffs initiated this separate civil lawsuit against the Governor and Attorney General of Georgia, in their individual and official capacities, to challenge the constitutionality of the Statute. Plaintiffs

Fran Schindler and Jim Chastain are FEN volunteers who allege that they want to provide information and support to Georgia residents who want to commit suicide, including by demonstrating methods of committing suicide and by holding individuals' hands as those individuals commit suicide. Plaintiff Susan Caldwell is a Georgia resident who suffers from Huntington's disease. She alleges that she may commit suicide in the future if her quality of life deteriorates beyond the point she is willing to bear, and that she would like to immediately receive information from Schindler and Chastain on how to commit suicide. Schindler and Chastain allege that they are not providing information and support to Caldwell and other Georgia residents, despite their desire to do so, based on their fear of criminal prosecution. Schindler and Chastain do not allege that any Georgia agent or official threatened them with prosecution. Their fear of prosecution was based on the Goodwin prosecution, the broad language of the Statute, and their claim that the Statute chilled the exercise of their First Amendment rights.

Plaintiffs Original Verified Complaint [1] claimed that the Statute was void for vagueness under the United States and Georgia Constitutions, (Claims 1-2), that it was unconstitutionally overbroad, (Claim 3), and that it was an unconstitutional content-based restriction on speech, (Claim 4). Plaintiffs sought a declaration that the Statute was facially unconstitutional, an injunction prohibiting

enforcement of the Statute, and attorneys' fees and costs. The Complaint also requested an award of nominal damages against the Governor and Attorney General, in their individual capacities, based on their responsibility for enforcing and administering Georgia statutes.

The State filed its Motion to Dismiss [8] the Original Complaint for lack of standing and failure to state a claim. The State argued, among other things, that Plaintiffs' claims under the Georgia Constitution were barred by the Eleventh Immunity and by state sovereign immunity, and that the claims against the Governor and Attorney General in their individual capacities for nominal damages were barred by qualified immunity. (Mot. Dismiss 42-49). In response to these arguments, Plaintiffs declared: "Plaintiffs will abandon their claims arising under the Georgia Constitution and for nominal damages; qualified immunity (raised by Defendants in defense to Plaintiffs' nominal-damages claim) and sovereign immunity (raised as a defense to Plaintiffs' State-Constitution claim) are therefore no longer at issue." (Resp. Mot. Dismiss [16] at 36 n.18).

After representing that they would abandon their claims under the Georgia Constitution and for nominal damages, Plaintiffs filed their Amended Verified Complaint [19]. The Amended Complaint was identical to the Original Complaint, except it included the Plaintiffs' verifications under oath that had been

inadvertently omitted from the Original Complaint. The Amended Complaint retained the claims under the Georgia Constitution and the request for nominal damages.

Plaintiffs then filed their Consent Motion to File Substitute Amended Verified Complaint [21]. In their Motion, Plaintiffs stated: "In filing this Amended Verified Complaint, Plaintiffs inadvertently failed to withdraw the following two claims that Plaintiffs had previously abandoned in their Response to Defendants' Motion to Dismiss: (1) that O.C.G.A. § 16-5-5 violates the Georgia Constitution, and (2) that Plaintiffs are entitled to recover nominal damages." (Mot. File Substitute Am. Compl. ¶ 2). Plaintiffs requested "to withdraw their Amended Verified Complaint" and requested "a consent order permitting the filing of the attached Substitute Amended Verified Complaint with attached verifications and with the above-mentioned claims deleted." (Id. ¶ 3). The Motion was granted and Plaintiffs' Substitute Amended Complaint was accepted for filing. The Substitute Amended Complaint abandoned the claim that the Statute was unconstitutionally vague under the Georgia Constitution and abandoned the request for nominal damages against Defendants in their individual capacities.

At the same time this case was pending, the Goodwin case was progressing through the Georgia state courts. On April 19, 2011, the Forsyth Superior Court

denied the Goodwin defendants' motion to dismiss the Indictment, rejecting their argument that the Statute was an unconstitutional abridgement of speech. After denying the Goodwin defendants' motion, the Forsyth Superior Court granted a certificate of immediate review. See Final Exit Network, Inc. v. State, 2012 WL 360523, at *1 (Ga. Feb. 6, 2012). The Georgia Supreme Court granted the Goodwin defendants' application for interlocutory appeal to consider the constitutional challenges to the Statute. Id.

The Georgia Supreme Court held that the Statute was facially unconstitutional. The court noted that the Statute was a "selective restraint on speech with a particular content," and that the Statute was therefore required to satisfy "a strict level of constitutional scrutiny." Id. The State's compelling interest in preventing suicide did not justify the Statute's content-based restriction of speech. Id. at 2. The Georgia Supreme Court invalidated the Statute as facially invalid under the free speech clauses of the United States and Georgia Constitutions. See id. at 3.

After the Georgia Supreme Court announced its opinion in Final Exit Network, Inc. v. State, the State moved to dismiss this case as moot. Plaintiffs contend that the case is not moot, and they have moved for leave to amend their

Substitute Amended Complaint to reassert their claims for nominal damages against the Governor and Attorney General in their individual capacities.

## II.     DISCUSSION

### A.     Mootness

Article III of the United States Constitution mandates that federal courts adjudicate only "actual, ongoing cases or controversies." See Brooks v. Ga. State Bd. of Elections, 59 F.3d 1114, 1118 (11th Cir. 1995) (citing U.S. Const. art. III; Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990)). "'It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Id. (quoting Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)). "An issue is moot 'when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1216 (11th Cir. 2009) (quoting Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Heath & Rehabilitative Servs., 225 F.3d 1208, 1217 (11th Cir. 2000)). "When events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." Fla. Ass'n of Rehab. Facilities, 225 F.3d at 1217.

Plaintiffs' lawsuit "challenges the constitutionality of O.C.G.A. § 16-5-5(b)." (Substitute Am. Compl. at 1). They request a declaration that the Statute is unconstitutional and an injunction prohibiting the State from enforcing the Statute. (Id. at 26). The Georgia Supreme Court has now unequivocally held that Section 16-5-5(b) is facially invalid. See Final Exit Network, Inc., 2012 WL 360523, at *1. "If a facial challenge is upheld, then the state cannot enforce the statute against anyone." Amelkin v. McClure, 205 F.3d 292, 296 (6th Cir. 2000) (citing Bd. of Trustees v. Fox, 492 U.S. 469, 483 (1989)). Plaintiffs' case is thus moot, because the Statute has been declared unconstitutional, there is no possibility that it will be enforced against Plaintiffs, and there is no additional relief that this Court can provide. See, e.g., Covenant Christian Ministries, Inc. v. City of Marietta, 654 F.3d 1231, 1239 (11th Cir. 2011) ("When a party challenges an ordinance and seeks injunctive relief, a superseding ordinance moots the claim for injunctive relief."); Nat'l Advertising Co. v. City of Miami, 402 F.3d 1329 (11th Cir. 2005) ("[The Eleventh Circuit] and the Supreme Court have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation."); Butler v. Ala. Judicial Inquiry Comm'n, 261 F.3d 1154, 1158-59 (11th Cir. 2001) (decision by Alabama Supreme Court that "effectively eliminated" a particular clause of a judicial canon

mooted the constitutional challenge to that clause); Phelps v. Hamilton, 122 F.3d 1309, 1325-26 (10th Cir. 1997) (constitutional challenge to Kansas Anti-Stalking Statute was moot after Kansas Supreme Court held that the statute was unconstitutionally vague).

There is an exception to this principle of mootness where there is a "substantial likelihood that the challenged language will be reenacted," or where the statute is replaced by a statute with narrower but still similar language. See Coral Springs Street Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1329 (11th Cir. 2004). This likelihood exists when, for example, the defendant has indicated an intention to reenact the challenged statutory language, or where it has already been replaced by "another constitutionally suspect law." Id. Neither of these circumstances exists in this case. The State has not enacted a new statute to replace the invalidated Statute, and there is no indication that a substantially similar statute will be enacted.[1] Plaintiffs argue for the application of rules that apply when a defendant voluntarily ceases the challenged conduct, but that

---

[1] A bill to prohibit assisted suicide is currently pending, but it is substantially dissimilar to the now-invalidated Statute. See H.B. 1114, 151st Gen. Assemb., Reg. Sess. (Ga. 2012). HB 1114 prohibits knowingly and willfully, and with actual knowledge that a person intends to commit suicide, physically helping or physically providing the means for that person to commit suicide. Id. § 1(a)-(b). This prohibition does not touch on the same areas of First Amendment concern as the Statute and so, regardless of how likely it is that HB 1114 will become the law, Plaintiffs' case still would be moot.

situation is not implicated where a state's highest court strikes down a statute as facially invalid.[2]

The Court concludes that Plaintiffs' claims for a declaration that the Statute is unconstitutional and for injunctive relief prohibiting enforcement of the Statute are moot. This case is therefore required to be dismissed unless Plaintiffs are granted leave to amend their complaint to assert a non-mooted claim for relief.

B.     Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that a "court shall freely give leave [to amend pleadings] when justice so requires." "District Courts have broad discretion to grant or deny the leave to amend. In the absence of undue delay, bad faith, dilatory motive or undue prejudice, leave to amend is routinely granted." Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1405 (11th Cir. 1994) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

---

[2] "Where a defendant voluntarily ceases challenged conduct, the case is not moot because nothing would prevent the defendant from resuming its challenged action." Sierra Club v. EPA, 315 F.3d 1295, 1303 (11th Cir. 2002). Here, there is no possibility that the State will resume the challenged conduct because the challenged statute has been facially struck down by the Georgia Supreme Court, and thus has no legal force. Contrary to Plaintiffs' suggestion, there is no requirement that the Georgia legislature repeal the Statute, as it has no force regardless of whether it is formally repealed. Similarly, it is irrelevant whether any state officials have issued a directive to local district attorneys prohibiting enforcement of the Statute.

This case presents the unusual circumstance where parties seek to re-assert a claim that they specifically, purposefully, and expressly abandoned earlier in the same litigation. Plaintiffs suggest that they abandoned their nominal damages claim because they "became concerned that issues regarding damages would distract from the central issue in the lawsuit—the unconstitutionality of Georgia's assisted suicide statute." (Mot. Leave to Amend ¶ 2). The <u>Goodwin</u> defendants' constitutional challenge to the statute, however, was pending at the time that Plaintiffs abandoned their claim for nominal damages. Plaintiffs contend that "the unconstitutionality of the Statute was readily 'apparent,'" (Resp. Mot. Dismiss as Moot 5-6), so the possibility that a Georgia state court would invalidate the Statute also should have been readily apparent and reasonably foreseeable. That Plaintiffs were happy to abandon their claim at a time when doing so was convenient but now seek to re-assert the claim for the sole purpose of prolonging the litigation of a mooted case convinces the Court that leave to amend should not be granted in this case.[3]

---

[3] The Court also observes that Plaintiffs sought nominal damages against the Governor and Attorney General in a pre-enforcement challenge to a statute that appears only to have been enforced once in its history, by a local district attorney. In other words, Plaintiffs sought to challenge a statute that had not been enforced against them on the grounds that it might be enforced in the future. There is no indication that the Governor or Attorney General ever enforced the Statute, ever threatened to enforce the Statute, had any direct responsibility for enforcing the

## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File a

Second Amended Complaint [40] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Based

Upon Mootness [37] is **GRANTED**.  The remaining motions in this case [8, 24,

29] are **DENIED** as moot.

---

Statute, ever formulated any policy or custom at all with respect to the Statute specifically or assisted suicide in general, or had any direct responsibility whatsoever for enforcing the Statute.  Section 1983 claims for nominal damages against state officials are subject to qualified immunity.  See Hopkins v. Saunders, 199 F.3d 968, 976-77 (8th Cir. 1999) (holding that nominal damages claims are subject to qualified immunity and noting that most other circuits have either expressly or implicitly held the same); see also Rowan v. Harris, 316 F. App'x 836, 838 (11th Cir. 2008) ("It is abundantly clear on this record that his nominal damages claim will not survive a qualified immunity analysis.").  It is unclear how Defendants could be subject to an award of damages in their individual capacities when the only harms in the case are that a statute existed on the books and that one local district attorney obtained an indictment against similarly situated individuals.  In any event, it is not necessary to decide whether and how Plaintiffs could obtain an award of damages against Defendants for their lack of action with respect to the Statute.  Plaintiffs expressly abandoned their damages claim, and the Court declines to grant Plaintiffs leave to amend their Substitute Amended Complaint for the sole purpose of reasserting their abandoned claims so that they may litigate the constitutionality of an invalidated law.

**SO ORDERED** this 30th day of March, 2012.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE